Kirkpatrick, C. J.
This is an action of debt upon a bond given to the sheriff of the county of Essex, for the bounds and rules of the prison. To the plaintiffs’ declaration, the defendants have pleaded sundry pleas; and to the first, fourth, and fifth of these, the plaintiffs have demurred; and the question is upon the demurrers.
The first plea, viz. nil debet is abandoned on the argument by the defendants themselves. And rightly. [*] Nil debet to a bond, on general demurrer, is bad. 2 Wilson 10, 2 L. Haym. 1500.
The fifth plea, that the act under which this bond is taken, directs that it be taken in double the sum for which the defendant is committed; and that in this case the bond exceeds that sum. This plea cannot be maintained. Likening it to the common case of a bail bond, (and I can see no difference in the principle) the cases of Nordon vs. Horsly 2 Wilson 69, and Wishard v. Wilden, 1 Bur. 330, are conclusive. In laying down the law in the latter of these cases, Ld Mansfield says, “the sheriff, or perhaps the plaintiff) may be answerable or punishable; but the bond is not void; the statute is directory only.”
The fourth plea deserves more consideration. It presents a new case, and the law must be settled. The defendants *572 pleaded, in substance, in this plea, that walking within the bounds and rules of the prison, and near the line thereof, (which was designated by no visible marks or objects) the prisoner, casually, acccidentally, and by mistake, walked over tbe same, to the distance of five feet and no more, and then immediately, of his own free will and accord, and without any fresh pursuit or re-caption, returned into the custody of the sheriff, within the said bounds and rules, and there continued until discharged by due course of law; and that this is the walking out and escape, of which the plaintiffs complain, &c.
Prison bounds and prison yards, have at all times existed. They have generally, but I believe not always, been surrounded with walls, to prevent escapes. The provision made by the act in question, only extends these bounds; and instead of walls for the safe keeping, requires of the prisoner, what is much more suitable to the condition of a free man, a bond, with sureties, that he will heep himself within them. The bonds, therefore, so far as it relates to escapes, are to be considered as the walls of the prison. AYhat [*]• was an escape before, from the ancient limited bounds, is an escape now from the new enlarged bounds, and nothing else. The doctrine of escape is no way altered. The plaintiff’s remedy against the sheriff and the sheriff’s defence against the plaintiff, are the same now as before the passing of the act. The condition of things is in no way changed, except that the sheriff, for his security, instead of the walls of the prison, has the defendant’s bond with sureties, taken upon his own judgment, and at his own risk.
Let us see how this is. By the law, as it stood before the passing of this act, that is, by the common law, if a defendant in custody on mesne process made an escape, the plaintiff had his action on the case against the sheriff, for his damages, and the sheriff again had his action on the case against the defendant, to recover over his action. It was not necessary that there should have been an actual recovery against the sheriff, to entitle him to his action against the defendant. His action was grounded upon his liability, and therefore, he might pursue it as well before, as after a recovery against himself. To this purpose is Cro. Eliz. 53, 234, 349.
The sheriff’s action therefore, against the defendant, being grounded entirely upon his own liability to the plaintiff, it is manifest, that whatever took away that liability, took away also his right of action; and of course, that whatever was a good plea in the mouth of the sheriff against the plaintiff in his action of escape, was a good. plea also in the *573 mouth of the defendant against the sheriff, in his action. Now, as the sheriff might plead to the plaintiff’s action, a rescue, a re-caption or fresh pursuit, or the voluntary return of the defendant into custody before action brought; so the defendant might also plead the same pleas to the sheriff’s action against him. And in both cases, they are a complete bar. Cro. Eliz. 873, 2 Sh. 908, Com. Rep. 554.
[*] This I think, was incontestably the case at the common law. Has this act altered it?
The act is made for the benefit and casement of prisoners. It is to be construed liberally in their favor.
Upon the enlargement of the prison bounds to an extent which could not be surrounded by walls, it would have been absurd, as well as unjust, to make the sheriff liable, upon the old principles, for escapes which he had no means of preventing. Eor Ids security, therefore, instead of bars and bolts, and locks, the law gives 1dm a bond, of the sufficiency of which, he is to be the sole judge. Hut this bond creates no new obligation, it imposes no new7 duty upon the defendant. He was as much bound before, by the law of the land, to keep himself within the prison, as he is now by the bond. The sheriff’s action against him before, was as legitimate as it is now, and the same damages were recoverable, and upon the same principle. Eut there, instead of an action on the case, against a man who has broken prison, and perhaps lied his country, lie has a bond with sureties, not to recover any thing more or different from what by law he could have recovered before, but to make that recovery secure. On the most obvious reasoning, therefore, wliatev. er was a good defence then, is a good defence now. If, in in this case, the plaintiffs, instead of taking an assignment of this bond, had brought their action of escape against the sheriff, as they might well have done, and the sheriff had pleaded thereto the matters set forth in this plea, and had had judgment for himself, as of course he must, can it be imagined that he still could support an action on the bond, against the defendant? It would be contrary to all principle. The sheriff in that case, would have been in no wise damnified, he would have been subject to no liability. Shall the plaintiffs then be put into a better situation, and the defendants into a [*] worse, by the assignment of the bond? Can the sheriff by a mere transfer, raise up a right of action which he never had himself? which never existed before? Or can he by that means, wrest from the defendants their legitimate plea? Certainly not. It is manifest that the act gave the assignment merely to save the circuity of action, and not to alter the substantial rights of the parties.
*574 The money which the plaintiffs had a right to recover against the sheriff, the sheriff had aright to recover against the defendants, and no more. Can this right be enlarged to the plaintiffs against the defendants, by the assignment of the bond? It cannot.
It has been insisted that the words of the act are express and positive, thati/' the prisoner walk out of the said bounds the bond shall be forfeited. They are so. But then, like all other words, they must have a construction according to the intent of the Legislature, and suitable to the subject matter under consideration.
The question then will be, what is walking out of the bounds, according to the true meaning of the act? And I think the plainest rules of construction tell us that it can be no other than such walking out as before the passing of the act, would have been an escape, a walking out by which the plaintiffs would have been damnified, for which, they would have had their action against the sheriff, and he against the prisoner. And this is the import of the phrase in the act concerning sheriffs. There it is said if the sheriff suffer the prisoner to walk out of the prison, it shall be an escape. So that by Legislative construction, the words walking out, &c. mean an escape, an escape as understood in law language. The voluntary return therefore, may be pleaded to it, and it is a complete bar. That the words are not to be taken literally, but according to the principles of sound construction, is [f] manifest from many cases that might he put; as the invasion of a public enemy, the imminent danger of the prisoner’s own life, or that of others, from fire, &c. Nay indeed, I think a hundred cases might be put, where even Shylock himself, could not construe the walking out to he a forfeiture of the bond. Whether this be one of those cases, it will be well for the plaintiffs to consider.
Upon the whole, therefore, I think, there must be judgment for the defendant upon the demurrer.
Rosseii, J. — Was decidedly of the same opinion.
Pennington, J.
This is an action on a bond, taken by the sheriff of Essex, for the liberty of the bounds of the prison, to Walter Kendrick, one of the defendants, and assigned by the sheriff to the creditor, accordingto the statute. To a declaration on this bond, the defendant pleads five pleas. On the second and third plea, issue is taken, and they are not now a subject of consideration. To the first, fourth and fifth pleas, the plaintiff demurs, and there is joinder in demurrer. The defendant’s counsel, on the argument, *575 abandoned the first plea, it is therefore out of the question. Before I proceed to a consideration of the fourth and fifth pleas, it will be proper to take notice of an objection to the declaration, made by the counsel for the defendants, to wit, that it is bad, inasmuch as it does not set out the issuing the writ on which the defendant, Kendrick, was in prison; that it was marked for bail in a certain sum ; that the writ was delivered to the sheriff, and he arrested the prisoner thereon. In support of this objection, they say, that the precedents of declarations on bail bonds all set out the arrest, &c. under process. The first answer to this is, that it has been adjudged in England, that the arrest in an action on a bail bond cannot be traversed; for otherwise, it would be a way to avoid all bonds civilly taken; 1 Stra. 444. But the statute under which bail bonds are taken, is different in this respect from the act authorizing [*] bonds for the rules of the prison. The statute, 23 Henry 6, makes it the duty of the sheriff to let out of prison, on reasonable sureties, all persons arrested by them in their custody, by force of any writ, bill, or warrant, in any personal action. Our act relative to the bounds of the prison, says nothing concerning arrest or process; but simply provides, that every prisoner in any civil action, giving bond to the sheriff, &c. shall have liberty, &c. The declaration in this case, states that Kendrick did surrender himself before the judges of the Inferior Court of Common Pleas in and for the county of Essex, in discharge of his bail, in a certain action of trespass on the case upon promises, brought against him by the plaintiffs, and that he was thereupon committed to the custody of the sheriff by the court. It fully sets out an allegation, that Kendrick was legally a prisoner in a civil action, at the suit of the plaintiffs; the state of the action, and the manner and cause of his commitment; and I think, with sufficient certainty. The fifth plea, bringing up matter of inferior magnitude, I shall consider it first.
The first ground of objection taken under this plea is, that the liberty of the bounds of the prison cannot be given only in cases of commitments on execution. It is admitted that the words of the act are broad enough to embrace commitmitments on mesne process; but it is insisted on, and that with great earnestness, by one of the learned counsel for the defendants, that this construction would render the act repugnant to the statute, Fat. 203; which in substance, is copied from 23 Henry, 6, c. 9 ; that as both acts are in pari materia, they must be taken as one act, on the same subject matter. Admitting this to be the case, yet I can perceive no difficulty in reconciling them, in giving a construction to *576 the last act corresponding with the letter of it<- The one is intended as a provision to let prisoners ■ confined or arrested for debt on mesne process, [*] at large on bail; the other, to give all the prisoners confined for debt, the liberty of walking, and being within a certain district of land- annexed. to the Jail, instead of keeping them in close confinement, within the four walls of the prison. The second point taken under this plea is, that the bond on which the action is brought, is taken for more than double the sum for which the prisoner was committed. ' The fact is so; it over-runs the double- amount somewhere about a sixth part. If the sum contained in the bond was the sum- actually to be recovered, I should think that there was something in the objection ; but that is not the case. As the bond is. directed by the act, to be taken in double the amount of the sum for which the prisoner is committed, some other rule must be resorted to, to ascertain the actual sum to be recovered.— The bond is presumed to be voluntarily made, and presented to the sheriff; he is, however, not bound to receive it unless it is in double the amount of the debt, with which the prisoner is charged. Should the sheriff act oppressively in requiring exorbitant siuns, no doubt he would be liable to punishment. There are no negative words in this provision of the statute,and I consider it merely directory.
The fourth plea brings up for consideration, the real merits of this case, and' is in substance, that the limits of the prison were not designated by any visible lines or marks, but that the limits terminated by imaginary lines; that Kendrick, casually, accidentally, and by mistake, walked over the,bounds of the prison limits, about five feet, and no more, and voluntarily returned before action brought. If this was an action of escape against the sheriff, I apprehend the plea would be good; It in that case, might have been considered a negligent escape, with a voluntary return of the prisoner before action brought. This voluntary return before suit brought, would have purged the escape, in case the escape itself was negligent and not voluntary — for a Voluntary .escape cannot be purged. [*] If the bond in this case could be construed to have been given merely as an indemnity to the sheriff, the plea would have amounted to a plea of non damnificatns, and have come within the case of Dole vs. Moulton, cited from New-York, 2 Johns. Cas. 205. But our act is materially different from the New-York act on the same subject. The Ncw-York act directs the bond to be given to the sheriff, conditioned that the prisoner shall remain a true and faithful prisoner, and shall not at any time and in any wise escape, or go without the *577 limits of the said respective liberties, until discharged by due course of law; but no authority is given to assign the bond, nor is it declared by the act to be forfeited. By our act, the bond is also given to the sheriff, conditioned that the prisoner shall keep within the rules of the prison; so far, the acts bear some resemblance to each other; but oür act does not stop here, but goes farther, and dedai'Cs that in case the prisoner walk out of the bounds of the prison, thé bond shall be forfeited, and that the sheriff shall assign thé bond to the plaintiff, and the plaintiff is authorized to bring a suit in his own name. The New-York act, in express terms, declares that the bond shall be for the indemnity of the sheriff only. It appears to me that we cannot consider our act as merely providing an indemnity to the sheriff, but as furnishing a remedy to the plaintiff.* It is said by the counsel for the defendant, that an assignee cannot acquire by the assignment, any other rights than What the assignor had at the time of the assignment. Admit itthe bond is forfeited in the hands of the sheriff; the whole depends on the construction of the act. If the bond \vas intended as a mere indemnity to the sheriff, why declare the bond forfeited, and direct an assignment? I consider that we are bound by the positive provisions of the statute, and the common law doctrine of escape as out of the question; and it appears to me, this is the reason and good sense of the [*] thing; an escape whether negligent or voluntarily, implies a default in the oflicer. It is true, that this default may be purged in case of negligent escapes, by the diligence and fidelity of the oflicer, by fresh pursuit and recaption, or a voluntary return of the prisoner before action brought; still it is a fault, or it would not need purging; the sheriff, ünder the statute, is bound to take the bond and let the prisoner at large within the rules; how can the sheriff be in fault in case he escapes ?
On the second argument of this cause, the counsel for the defendants referred the court to the case of Bartlet vs. Willis, 3 Mass. Rep. 80. The bond in that case was given to the creditor, and in that respect bears a much stronger resemblance to our case than the one from New'-York. It was conditioned that the prisoner continue a true prisoner, &c. without committing any manner of escape. The act gave the privileges of the yard, and appartments of the prison in the day time, and the apartments of the prison at *578 night. Jt turned out in evidence, that the prisoner went to the pump in the prison yard in the night; he was not to be locked up; but the apartments of the prison was the limits at . night. The fact then was, that he went a few steps over the limits to get water, and all the court were clearly of an opinion that this was an escape. The common law doctrine of a voluntary return before action brought, was wholly disregarded, and why ? The doctrine of purging negligent escapes, grew out of a principle of indulgence to the sheriff; but the sheriff was out of the question ; which is precisely the case under consideration. The case actually-adjudged, is as strong a case against the defendant in this case as can well' be. The case however, was cited for the purpose of showing a distinction between a voluntary going over the limits, and an involuntary one. Chief Justice Parsons, in giving the opinion of the court, says, that they were all of opinion, that if a prisoner having given bond to obtain-[*] an easement from close confinement, be found voluntarily without any apartment, &c., it is an escape. I do not consider the plea in this case, as alledging that Kendrick involuntarily went out of the limits, casually, accidentally, and by mistake; what is it but carelessly, thoughtlessly and negligently. That is, he did not intentionally go over the rules; it is not a question of quo animo; to call an inadvertant act, an involuntary one, is a perversion of language. It appears to me, that we can give no other construction to the act, than that the prisoner is to keep within . the rules or limits of the prison, at the peril of his sureties. How far the visitation of God, inevitable necessity, or irresistible force will justify, it is time enough for the Court to determine when the question shall arise. 1 am, on the whole, of opinion, that the plaintiff is entitled to judgment.
Judgment for defendants.

 See 7 Johns. Rep. 511, Chief Justice Rent’s opinion. Plea in bar, admitting the fact, but alledging that plaintiff is not damnified by the going over the limits, is bad, on demurrer; 7 Halst, 1.